REVISED MARCH 12, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2009

Charles R. Fulbruge III
Clerk

No. 07-31191

United States of America, ex rel., BRANCH CONSULTANTS

Plaintiff-Appellant

v.

ALLSTATE INSURANCE COMPANY; STATE FARM FIRE AND
CASUALTY COMPANY; LIBERTY MUTUAL FIRE INSURANCE
COMPANY; FIDELITY NATIONAL INSURANCE COMPANY; FIDELITY
NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY;
AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY; PILOT
CATASTROPHE SERVICES INC; CRAWFORD & COMPANY, Allied Claims;
NCA GROUP INC; SIMSOL INSURANCE SERVICES INC; UNIDENTIFIED
PARTIES; AMERICAN RELIABLE INSURANCE COMPANY; COLONIAL
CLAIMS CORP; STANDARD FIRE INSURANCE COMPANY

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-4091

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Relator Branch Consultants appeals the district court's dismissal of its
False Claims Act (FCA) complaint under the FCA's first-to-file jurisdictional bar.
See 31 U.S.C. § 3730(b)(5) (1994). The district court found the bar applicable

because Branch's complaint alleges "the same general conduct and theory" of Katrina-related insurance fraud as the previously-filed FCA action in States ex rel. Rigsby v. State Farm Insurance Co. (Rigsby),[1] despite the fact that Branch focuses on different details, geographic locations, and other insurer defendants.

We agree with the district court that Branch cannot avoid § 3730(b)(5)'s jurisdictional bar by merely adding details and geographic locations to the material allegations contained in Rigsby. Thus, we affirm the district court's dismissal as to Defendant State Farm Fire and Casualty Company and Allstate Insurance Company – the only Branch Defendants that Rigsby names. But, under the facts of this case, we cannot hold that "suit as to one is suit as to all." Thus, we disagree with the district court that Rigsby's State Farm and Allstate allegations and generic naming of two other insurers, by itself, triggers the first-to-file bar as to Branch's specific allegations against other insurers that Rigsby did not name. Accordingly, we affirm the district court's dismissal as to State Farm and Allstate and reverse the dismissal as to all other Defendants. Because factual findings may be appropriate with respect to the public disclosure ground urged by the remaining Defendants in the alternative, we remand the cause so the district court can consider that ground in the first instance. We also remand so the district court can consider in the first instance the remaining Defendants' argument that Branch's pleading is deficient under FED. R. CIV. P. 9(b).

## I. FACTS

Relator Branch brought this action against eight insurance companies and six adjusting firms on behalf of the United States under the qui tam provisions of the FCA.[2] The insurer Defendants are participants in FEMA's Write-Your-

---

[1] No. 1:06-CV-433 (S.D. Miss. Apr. 26, 2006).

[2] The Appellees in this appeal are Allstate, State Farm, Liberty Mutual Fire Insurance Company, Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company, American National Property & Casualty Insurance Company, Pilot

Own flood insurance program (the WYO program). This program allows private insurance companies to write and service, in their own names, the federally backed Standard Flood Insurance Policy (SFIP). Participants in the WYO program are responsible for determining the extent of an insured's flood damage, which in turn determines the amount of benefit ultimately paid out by the Federal Treasury. See Wright v. Allstate Ins. Co., 415 F.3d 384, 386 (5th Cir. 2005) (noting that payments on SFIP claims are a direct charge on the United States Treasury). While the program has rules applicable to all insurers in the program, the program does not involve coordinated efforts by or joint cooperation among the participating insurers.

To ensure accurate estimates of flood damage, WYO insurers are generally required to comply with certain conditions, such as submitting a proof of loss. Following Hurricane Katrina, however, FEMA was forced to waive certain of these requirements in order to expedite payments to insureds. According to Branch, this created a perverse incentive for WYO insurers to understate losses due to wind (which an insurer would be required to pay under the insured's homeowner's policy) and overstate losses due to flood, thereby shifting the loss from the WYO insurers to the federal government.

A. The Rigsby Complaint

On April 2, 2006, prior to the filing of Branch, Cori and Kerri Rigsby, employees of a company that provides disaster claims management services for several WYO insurers, filed an FCA claim alleging that four insurance companies defrauded the federal government by mischaracterizing wind damage as flood damage in the wake of Hurricane Katrina.[3] Specifically, the Rigsbys

---

Catastrophe Services Inc., Crawford & Company, Allied Claims, NCA Group Inc., Simsol Insurance Services Inc., American Reliable Insurance Company, Colonial Claims Corp., and Standard Fire Insurance Company (collectively Defendants).

[3] The Rigsby complaint is currently pending in the Southern District of Mississippi.

alleged that, while adjusting claims for certain WYO insurers, they learned that the insurers "made a corporate decision to misdirect and misallocate claims from those of hurricane coverage to flood claims" payable by the federal government. While the Rigsbys lodged these general allegations of wind/water fraud against four WYO insurers,[4] the only specific instances of fraud alleged in their complaint concerned defendant State Farm. The Rigsbys alleged that "State Farm directed its employee adjusters and independent contractor adjusters to show flood damage whenever and wherever there was any amount of water damage, and to adjust the claim as flood insurance rather than hurricane insurance even though the primary mechanism for damage was wind, not flood waters." "[A]djusters were told that if they initially analyzed a claim and found that the insured had less damage under flood coverage than policy limits allowed, the adjuster was told to go back through the claim a second time to ensure that the flood claim 'hit limits.'" The Rigsby's complaint alleged two specific instances where State Farm put this fraudulent policy into practice, both dealing with Katrina damage to homes in Mississippi, and also alleged that they provided adjusting services for Allstate.

B. Branch's Complaint

With Rigsby under seal, Branch filed this FCA action on August 2, 2006 and amended its complaint on June 22, 2007.[5] Like Rigsby, Branch alleges that the WYO insurer Defendants "defrauded NFIP by misattributing wind damage and other non-flood losses to the flood policies subsidized or underwritten by the Government rather than correctly attributing such losses to causes that are

---

[4] The insurer defendants in Rigsby are State Farm, Allstate, Nationwide Insurance Company, and USAA Insurance Company.

[5] Our focus is on the allegations in Branch's first amended complaint because "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 127 S. Ct. 1397, 1409 (2007) (construing the FCA's public disclosure bar).

4

covered by homeowners policies largely underwritten by themselves." But unlike Rigsby, Branch goes beyond these general allegations of wind/water fraud by detailing fifty-seven specific instances where Defendants allegedly overestimated flood damage on Louisiana properties. Branch contends that it discovered these specific instances of fraud when various insureds hired Branch to re-examine the adjustments conducted by Defendants. During the course of this employment, Branch alleges it discovered:

> a.    numerous examples of minimal if any flood damage and obvious wind damage, with a WYO adjustment of 100% flood damage,
> b.    buildings with substantial roof and other damage obviously caused by wind, and a high-water mark only inches off the floor, with all damage nonetheless attributed only to flood, and
> c.    buildings with a substantial amount of flood damage but even more wind damage adjusted at or near flood policy limits with a relatively small portion of the loss attributed to wind.

For each of the fifty-seven claimed instances of fraud, Branch lists the homeowner's address, his or her insurance company and policy number, the amount of flood damage paid by the federal government, and a dollar amount and explanation of the "true" flood damage to the properties. While Branch, like Rigsby, names State Farm and Allstate, it also names a host of WYO insurers that the Rigsbys did not sue.[6] Branch lodges specific factual allegations against each of the WYO insurers it sued.

## C. District Court Proceedings

Defendants filed a motion to dismiss Branch's complaint, arguing that the district court lacked subject matter jurisdiction because (a) Branch's allegations were based on publically disclosed information, (b) Branch was not an "original source," and (c) Branch failed to file its first amended complaint in

---

[6] The additional Branch insurer Defendants are Liberty Mutual, Fidelity National Insurance Company, Fidelity National Property & Casualty Company, American National Property & Casualty, American Reliable, and St. Paul Travelers.

camera under seal at least sixty days before service. Defendants also argued that Branch's complaint did not meet the pleading requirements of FED. R. CIV. P. 9(b). Subsequently, the Southern District of Mississippi unsealed the complaint in Rigsby and, in response, Defendants filed a supplemental motion to dismiss, arguing that Rigsby barred Branch's complaint under § 3730(b)(5)'s first-to-file bar.

The district court granted Defendants' motion to dismiss, ruling only on the issues raised in the supplemental motion. The district court concluded that the FCA's first-to-file bar deprived it of jurisdiction over Branch's complaint because the complaint alleged the "same general conduct and theory of fraud" as Rigsby, regardless of whether Branch alleged different details, different geographic locations, or other participants in the alleged scheme. Branch's claims are now before this Court.

## II. DISCUSSION

Branch contends that the district court's construction of § 3730(b)(5) is inconsistent with the FCA's text and purpose and deviates from the interpretations of other courts. Branch also asserts that Rigsby cannot constitute a first-filed action under § 3730(b)(5) because it fails to satisfy Rule 9(b)'s pleading requirements. Defendants argue that if we accept Branch's arguments regarding the first-to-file bar, we should nonetheless affirm on the alternative grounds of the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), or Branch's failure to comply with the pleading requirements of Rule 9(b).

When addressing a dismissal for lack of subject matter jurisdiction, we review application of law de novo and disputed factual findings for clear error. Krim v. pcOrder.com, 402 F.3d 489, 494 (5th Cir. 2005). A district court's factual findings are clearly erroneous only if, after reviewing the record, this Court is firmly convinced that a mistake has been made. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998).

## A.  FCA Background

We have discussed the procedural underpinnings of the FCA's qui tam provisions on prior occasions and thus do not repeat them here.  See Riley v. St. Luke's Episcopal Hosp., 252 F.3d 749, 752-53 (5th Cir. 2001) (en banc); Searcy v. Phillips Elecs. N. Am. Corp., 117 F.3d 154, 160 (5th Cir. 1997).  It is sufficient to say that under certain circumstances, the FCA permits "suits by private parties on behalf of the United States against anyone submitting a false claim to the government[.]"  United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Serv. Co., 336 F.3d 346, 351 (5th Cir. 2003).

The history of the FCA's qui tam provisions demonstrates repeated attempts by Congress to balance two competing policy goals.  On the one hand, the provisions seek to encourage whistleblowers with genuinely valuable information to act as private attorneys general in bringing suits for the common good.  Id.  On the other hand, the provisions seek to discourage opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud.  Id.  To promote the latter goal, Congress has placed a number of jurisdictional limits on the FCA's qui tam provisions, including § 3730(b)(5)'s first-to-file bar.[7]  Under this provision, if Branch's claim had already been filed by another, the district court lacked subject matter jurisdiction and was required to dismiss the action.  Similar in purpose, the public disclosure bar prevents a private party from bringing a qui tam action regarding matters already the subject of public knowledge, unless that party is an original source of the information.[8]  While the two concepts have a similar goal – discouragement of

---

[7] "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).

[8] A court lacks jurisdiction "over an action under this section based upon the public disclosure of allegations . . . unless . . . the person bringing the action is an original source of the information."  Id. § 3730(e)(4).

parasitic lawsuits – they have different requirements. Here, the district court ruled only on the first-to-file bar and did not reach the public disclosure bar. Thus, we begin with the first-to-file bar.

## B.  The FCA's First-to-File Bar

§ 3730(b)(5) bars a plaintiff from bringing "a related action based on the facts underlying [a] pending action." Although this circuit has yet to articulate a test to determine when this provision applies, those circuits to do so have uniformly asked whether the later-filed action alleges the same material or essential elements of fraud described in the pending action. In United States ex rel. LaCorte v. Smithkline Beecham Clinical Labs., Inc., 149 F.3d 227 (3d Cir. 1998), for example, the Third Circuit rejected an argument that § 3730(b)(5) bars only later-filed qui tam actions arising from facts identical to those underlying a pending action, noting that the text of the statute applies to "related action[s] based on the facts underlying the pending action." Id. at 232 (quoting 31 U.S.C. § 3730(b)(5)) (emphasis added). According to the Third Circuit, "if a later allegation states all the essential facts of a previously-filed claim, the two are related and § 3750(b)(5) bars the later claim, even if that claim incorporates somewhat different details." Id. at 232-33.

Although LaCorte focused primarily on the text of § 3730(b)(5), the Third Circuit also found support for its construction in the history of the FCA. The 1986 amendment to the FCA, which introduced the current version of § 3730(b)(5), attempted to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." Id. at 234 (citation omitted). According to the Third Circuit, an "overly narrow interpretation" of § 3730(b)(5) would disrupt this delicate balance because "dozens of relators could expect to share a recovery for the same conduct, decreasing their incentive to bring a qui tam action in the first

8

place." Id. In contrast, a "broader bar" furthers the purpose of the FCA's qui tam provisions by ensuring "a race to the courthouse among eligible relators, which may spur the prompt reporting of fraud." Id. (internal quotations and alternations omitted).

In Walburn v. Lockheed Martin Corp., 431 F.3d 966 (6th Cir. 2005), the Sixth Circuit explicitly adopted the reasoning of LaCorte, holding that § 3730(b)(5) applies if both complaints "allege 'all the essential facts' of the underlying fraud, . . . even if [the later-filed] complaint 'incorporates somewhat different details.'" Id. at 971 (quoting LaCorte, 149 F.3d at 232-33). The Ninth Circuit did the same in United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181 (9th Cir. 2001), although it adopted slightly different language: "§ 3730(b)(5) bars later-filed actions alleging the same material elements of fraud described in an earlier suit, regardless of whether the allegations incorporate somewhat different details." Id. at 1189; see also United States ex rel. Hampton v. Columbia/HCA Healthcare Corp., 318 F.3d 214, 217-18 (D.C. Cir. 2003) (adopting the Ninth Circuit's "material elements of fraud test" from Lujan).[9] Likewise, the Tenth Circuit, relying again on LaCorte, has found § 3730(b)(5) applicable where the later-filed action does "no more than assert the same material elements of fraud" described in a pending action. United States ex rel. Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 (10th Cir. 2004).

We agree with these circuits that the applicability of § 3730(b)(5) should be determined under an "essential facts" or "material elements" standard. Accordingly, as long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending qui tam action, § 3730(b)(5)'s

---

[9] Nothing in Lujan indicates that the Ninth Circuit meant the phrase "same material elements of fraud" to be construed differently than LaCorte's phrase "all the essential facts" of the fraud, especially since the Ninth Circuit found LaCorte's "reasoning persuasive" as to the proper test under § 3730(b)(5). Lujan, 243 F.3d at 1189.

jurisdictional bar applies. The question then becomes whether the district court properly applied this standard, i.e., whether Branch's complaint avoids the potential preclusive effect of Rigsby because it alleges different details, different geographic locations, and different wrongdoers.

### 1. Details and Geographic Locations

We agree with the district court that a relator cannot avoid § 3730(b)(5)'s first-to-file bar by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior compliant. As the Third Circuit explained, a relator who merely adds details to a previously exposed fraud does not help "reduce fraud or return funds to the federal fisc," because "once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." LaCorte, 149 F.3d at 234; see also Grynberg, 390 F.3d at 1279 ("The pendency of [an] initial qui tam action . . . blocks other private relators from filing copycat suits that do no more than assert the same material elements of fraud, regardless of whether those later complaints are able to marshal additional factual support for the claim."). Any construction of § 3730(b)(5) that focused on the details of the later-filed action would allow an infinite number of copycat qui tam actions to proceed so long as the relator in each case alleged one additional instance of the previously exposed fraud. This result cannot be reconciled with § 3730(b)(5)'s goal of preventing parasitic qui tam lawsuits. See Laird, 336 F.3d at 351.

Under this framework, the district court properly dismissed Branch's allegations against State Farm. Rigsby specifically alleged that State Farm, in its capacity as a WYO insurer, reallocated claims on two Mississippi properties from wind damage to flood damage in a pernicious attempt to shift its costs to the federal fisc. Branch brought identical allegations against State Farm, except it also alleged facts concerning ten properties in neighboring Louisiana. Because

Branch cannot avoid the preclusive effect of Rigsby by focusing on additional instances of fraud occurring in other geographic locations, § 3730(b)(5) applies to bar its allegations against State Farm.[10]

## 2. Allstate

For this same reason, we affirm the dismissal of Allstate, named in the Rigsby complaint. We recognize that only skeletal allegations are raised against Allstate in that case. We express no opinion on the as-yet-unpresented question of whether a dismissal for lack of any factual basis or on Rule 9(b) grounds in the Rigsby case would then permit a suit by Branch or any other person with knowledge of facts from suing Allstate without facing the first-to-file bar. In other words, if the "first-filed" case is essentially a sham, does it continue to be "first" after the court in that case dismisses it? The answer to that question should await a case in which it is squarely presented.

## 3. Unnamed Defendants

The district court also dismissed Branch's allegations against a host of Defendants not named in Rigsby, presumably on the theory that Rigsby's broad allegations preempted the entire field of Katrina-related WYO fraud. No circuit has directly addressed the issue of whether allegations in a first-filed action can bar related allegations against wholly unrelated defendants brought in a subsequent action. The closest cases are those holding that allegations of fraud against a corporation may bar subsequent allegations of fraud against the corporation's subsidiaries. In Hampton, for example, the District of Columbia

---

[10] Branch further contends that the district court erred in failing to analyze Rigsby for Rule 9(b) sufficiency because, according to Branch, a complaint that fails Rule 9(b) cannot constitute a first-filed action under § 3730(b)(5). See, e.g., Walburn, 431 F.3d at 972-73 (holding that a complaint that fails Rule 9(b) is rendered legally infirm from its inception, and thus cannot preempt a later-filed complaint under the first-to-file bar). The sufficiency of the Rigsby complaint under Rule 9(b) is a matter for that court to decide in the first instance. Having alleged at least some detail as to State Farm, we hold that the Rigsby complaint is a "first-filed" complaint as to State Farm.

Court of Appeals held that § 3730(b)(5) barred an action against certain subsidiaries and employees of a corporation in light of a first-filed action naming only the corporation. 318 F.3d at 218-19. In reaching this conclusion, however, the court relied heavily on the fact that the first-filed action alleged a "corporate-wide" fraud perpetrated by the corporation directly through its subsidiaries. Id.; see also Grynberg, 390 F.3d at 1280 n.4 (relying on Hampton to conclude that an FCA action against a corporation barred a subsequent action alleging the same essential claim of fraud against its subsidiaries).

Several circuits have also addressed the issue of unnamed wrongdoers in the context of the FCA's public disclosure bar, § 3730(e)(4)(A), which, as we stated above, is not the same thing as the first-to-file bar. See, e.g., United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc., 436 F.3d 726, 729 (7th Cir. 2006) (industry-wide public disclosures of Medicare fraud bar qui tam actions "against any defendant who is directly identifiable from the public disclosures"); United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1019 (9th Cir. 1999) (public disclosures of fraud that failed to identify specific defendants but pertained to "a narrow class of suspected wrongdoers – local electrical contractors who worked on federally funded projects over a four-year period" – triggered the public disclosure bar as to those contractors); United States ex rel. Fine v. Sandia Corp., 70 F.3d 568, 572 (10th Cir. 1995) (where disclosures "revealed that at least two of [the laboratory's] eight sister laboratories were engaged in" a fraud, the government would have little trouble "examining the operating procedures of nine, easily identifiable, [Department of Energy]-controlled, and government-owned laboratories."); United States ex rel. Cooper v. Blue Cross and Blue Shield of Fla., Inc., 19 F.3d 562, 566 (11th Cir. 1994) (allegations of widespread Medicaid fraud made in sources in which a particular insurance company was not specifically named or otherwise directly identified were insufficient to trigger the public disclosure bar).

If we were to apply these decisions by analogy to the first-to-file situation, they suggest that there might be situations in which the allegations in a first-filed complaint pertain to such a narrow or readily-identifiable group of potential wrongdoers that § 3730(b)(5) acts to bar subsequent allegations against previously unnamed defendants. But that is not the case here. Rigsby does not allege a true industry-wide fraud or concerted action among a narrow group of participants. Rather, looking only at the facts pleaded (not any public information, which is not part of the first-to-file analysis), Rigsby implicates, at most, four specific WYO insurers among the approximately ninety-five WYO insurers conducting business in the Louisiana and Mississippi areas during Hurricane Katrina. Thus, Rigsby tells the government nothing about which of the ninety-one other WYO insurers (and adjusting firms working for or with those insurers), if any, actually engaged in any fraud. The potential for fraud exists in any government program and, certainly, in the situation presented by Hurricane Katrina where mass amounts of federal funds were expended in emergency and less-controlled conditions. By itself, then, Rigsby tells us nothing about any parties not named therein.[11] Thus, in combing through a host of WYO insurers and identifying those specific insurers and adjusting firms that may have committed wind/water fraud, Branch likely revealed instances of fraud that would have otherwise eluded the government.

Further, unlike the additional defendants named in Hampton and Grynberg, the additional defendants named in this case are not corporate affiliates or subsidiaries of the Rigsby defendants. Neither Rigsby nor Branch alleges that Katrina-involved WYO insurers conspired or acted in concert to defraud the government. They are not part of a small group of carefully-

---

[11] Indeed, private WYO insurance companies are independently responsible for issuing flood coverage and for adjusting, settling, paying, and defending all claims arising from such coverage. 44 C.F.R. § 62.23(d).

monitored federal contractors, or working together on a particular site. Rather, the class of wrongdoers that may have committed Katrina-related wind/water fraud are independent entities operating wholly separately, related only by their mutual participation in the government's WYO program. Under these circumstances, forcing the government to expend its limited time and resources wading through the records of ninety-one WYO insurers in an attempt to identify specific instances of fraud would completely undermine the enforcement component of the FCA's qui tam provisions.

That is not to say that the first-filed bar can never bar a suit against an unnamed alleged fraudfeasor who is not a corporate relative of the named fraudfeasor. As stated above, "once the government knows the essential facts of the fraudulent scheme, it has enough information to discover related frauds." LaCorte, 149 F.3d at 234. Here, nothing in the Rigsby complaint provided the government with facts from which it could discern a widespread fraud involving all WYO insurers or the identities of other specific fraudfeasors. Thus, the claims in the present case against previously unnamed alleged fraudfeasors are not barred by the first-to-file rule.

Accordingly, we conclude that the district court erred in dismissing under the first-to-file rule the Branch Defendants that Rigsby failed to name.

C. Public Disclosure Bar

The insurer Defendants argue that this Court should affirm the dismissal of Branch's claims on the alternative ground of the FCA's public disclosure bar. As discussed above, the public disclosure bar is based upon the notion that a qui tam suit does not benefit the Government if the information about the fraud is already publicly known, unless the plaintiff is an original source. See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys., 384 F.3d 168, 174 (5th Cir. 2004). The district court did not reach this ground. Because the district court should have the opportunity to address the facts underpinning the

claim of public disclosure and original source and make any necessary findings in the first instance, we do not reach this ground. Similarly, analysis of the Rule 9(b) challenge to Branch's complaint is customarily done in the first instance by the district court. We decline to address these issues for the first time on appeal, and we express no opinion on the outcome of these issues on remand.

## III. CONCLUSION

We AFFIRM the district court's dismissal of Branch's claims against State Farm and Allstate. We REVERSE the dismissal of Branch's claims against all other Defendants based upon the ground of the first-to-file bar. Rather than address Defendants' alternative grounds for affirmance, we REMAND the cause so the district court can consider those arguments in the first instance. See Breaux v. Dilsaver, 254 F.3d 533, 538 (5th Cir. 2001) ("Although this court may decide a case on any ground that was presented to the trial court, we are not required to do so.").