# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 21, 2012

No. 12-50377

Lyle W. Cayce
Clerk

PLANNED PARENTHOOD ASSOCIATION OF HIDALGO COUNTY TEXAS, INCORPORATED; PLANNED PARENTHOOD ASSOCIATION OF LUBBOCK, INCORPORATED; PLANNED PARENTHOOD OF CAMERON AND WILLACY COUNTIES; FAMILY PLANNING ASSOCIATES OF SAN ANTONIO; PLANNED PARENTHOOD OF CENTRAL TEXAS; PLANNED PARENTHOOD OF GULF COAST, INCORPORATED; PLANNED PARENTHOOD OF NORTH TEXAS, INCORPORATED; PLANNED PARENTHOOD OF WEST TEXAS, INCORPORATED; PLANNED PARENTHOOD OF AUSTIN FAMILY PLANNING, INCORPORATED,

Plaintiffs - Appellees

v.

THOMAS M. SUEHS, Executive Commissioner, Texas Health and Human Services Commission, in his Official Capacity,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.[1]

E. GRADY JOLLY, Circuit Judge:

The appellees, nine Planned Parenthood organizations that operate health clinics in Texas, obtained a preliminary injunction to block the enforcement of

---

[1] Stewart, Circuit Judge, concurs in the judgment only.

No. 12-50377

Texas Health and Human Services Commission regulations. The regulations state that health care providers participating in a Medicaid-like program must not perform or promote elective abortions or be affiliates of entities that perform or promote elective abortions. The district court preliminarily enjoined the enforcement of these regulations against the appellees, reasoning that the regulations likely violate the appellees' rights to free speech and association, and deny the appellees the equal protection of the laws.

The district court issued the preliminary injunction based on a wholesale assessment of the regulations' constitutionality, which gave insufficient attention to Texas's authority to subsidize speech of its choosing within its programs. Accordingly, the order of the district court granting a preliminary injunction is VACATED and the case is REMANDED.

I.

In 2005 the Texas Legislature created the Women's Health Program (WHP) as a project to "expand access to preventative health and family planning services for women." Act effective Sept. 1, 2005, ch. 816, § 1(a), 2005 Tex. Gen. Laws 2816, 2817. Under the WHP, Texas pays health care providers to provide various services, including counseling about contraceptives, to women who meet certain criteria. *Id*. § 1(a)-(b). The WHP is funded by both Texas and the federal government as a demonstration project under Medicaid, pursuant to a waiver issued by the United States Department of Health and Human Services.[2] *See* 42 U.S.C. § 1315. Federal funding accounts for most of the WHP's total cost.

---

[2] Based on the information provided by the parties, we understand that the Department of Health and Human Services intends to wind down federal funding for the WHP by November 2012, at which time Texas intends to carry on the WHP with exclusively state funds. Federal funding will, however, remain in place as long as the Texas Health and Human Services Commission is enjoined from enforcing the regulations that are the subject of this appeal.

No. 12-50377

Since the WHP's inception, the Texas Legislature has prohibited the Texas Health and Human Services Commission (THHSC), which is charged with administering the WHP, from contracting with "entities that perform or promote elective abortions or are affiliates of entities that perform or promote elective abortions." § 1(h), 2005 Tex. Gen. Laws at 2818. Until recently, however, THHSC had never formally interpreted this restriction on abortion-related activity, and the restriction had not been used to exclude the appellees from receiving WHP funds. Throughout the WHP's existence, THHSC has paid the appellees for their provision of WHP services, even though the appellees engage in abortion advocacy and have some legal relationship with Planned Parenthood Federation of America. The appellees have understood the restriction on abortion-related activity to mean that if they do not recommend abortion as a health procedure, and if they maintain a separate legal identity from abortion-providing clinics, then they can receive WHP funds.[3]

Recent developments unsettled the appellees' understanding and gave rise to the instant controversy. In 2011 the Texas Legislature re-authorized the WHP, and again prohibited THHSC from contracting with "entities that perform or promote elective abortions or affiliate with entities that perform or promote elective abortions." Act effective Sept.1, 2011, ch. 1355, Rider 62, 2011 Tex. Gen. Laws 4025, 4228; Act effective Sept. 28, 2011, ch. 7, § 1.19(b), 2011 Tex. Gen. Laws 300, 335. After the WHP's re-authorization, THHSC promulgated regulations interpreting the WHP's restriction on abortion-related activity. The regulations, like the statute, deny WHP funding for entities that perform or promote elective abortions or are affiliates of entities that perform or promote elective abortions. 1 Tex. Admin. Code § 354.1363(a). Under a limited exception

---

[3] The appellees maintain a separate legal identity from abortion-providing clinics as a result of *Planned Parenthood of Houston and Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005).

No. 12-50377

within the regulations, however, a clinic receiving WHP funds may affiliate with a hospital that performs or promotes elective abortions. *Id.*

Unlike the statute, and importantly for this case, the regulations also define "promote" and "affiliate." The regulations define "promote" as to "[a]dvocate[] or popularize[] by, for example, advertising or publicity." *Id.* § 354.1362(6). They define "affiliate" as:

> (A) An individual or entity that has a legal relationship with another entity, which relationship is created or governed by at least one written instrument that demonstrates:
> (i) common ownership, management, or control;
> (ii) a franchise; or
> (iii) the granting or extension of a license or other agreement that authorizes the affiliate to use the other entity's brand name, trademark, service mark, or other registered identification mark.

*Id.* § 354.1362(1).

THHSC mandated that recipients of WHP funds, including the appellees, certify their compliance with the new regulations. Believing compliance to be impossible, the appellees instead filed a federal lawsuit against THHSC Commissioner Thomas Suehs in his official capacity ("Texas") in the Western District of Texas, seeking declaratory and injunctive relief, including a preliminary injunction.

The appellees' complaint alleges that the THHSC regulations violate their constitutional rights of free speech and association, and deny them the equal protection of the laws. Underlying this claim—for purposes of standing to attack these regulations—is the appellees' implicit concession that, based on the new definitions furnished by the THHSC regulations, they promote elective abortions and are affiliates of entities that promote elective abortions, and therefore cannot receive WHP funds.

No. 12-50377

On April 30, 2012, the district court granted the appellees' requested preliminary injunction, blocking THHSC from enforcing the regulations. The court reasoned that the appellees had a substantial likelihood of succeeding on the merits of their lawsuit because the regulations impermissibly require the appellees to forego certain of their constitutional rights of free speech and association in order to receive WHP funds. The court also reasoned that the appellees had a substantial likelihood of succeeding on their equal protection claim because the regulations treat clinics and hospitals unequally. Texas appeals.

## II.

To obtain a preliminary injunction, the appellees were required to demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that their substantial injury outweighed the threatened harm to the party whom they sought to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).

"[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id.* (internal marks omitted). In reviewing the issuance of a preliminary injunction, we review the district court's findings of fact for clear error, its legal conclusions de novo, and the ultimate decision to issue the injunction for abuse of discretion. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (quoting *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 463 (5th Cir.2003)).

## III.

To focus our review of the district court's order, we will first identify the merits of the appellees' lawsuit on which the preliminary injunction is based.

No. 12-50377

The district court did not determine that the appellees are likely to prove that the regulations violate their right to perform abortions or to affiliate with entities that perform abortions. The right to obtain an abortion and any accompanying right to perform an abortion are not at issue in this appeal.

Instead, the district court held that the appellees are likely to prove that the regulations violate their right to promote abortion or to affiliate with entities that promote abortion. Put another way, the court held that the regulations likely abridge free speech. Specifically, the district court relied on a principle of constitutional law known as the "unconstitutional conditions doctrine," which we will briefly describe before moving forward.

A.

We start with the given premise that the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, prohibits states from enacting laws "abridging the freedom of speech." U.S. Const. amend. I. The United States Supreme Court has long recognized that the First Amendment prohibits not only direct burdens on speech, but also indirect burdens that are created when the government conditions receipt of a benefit on foregoing constitutionally-protected speech. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Speiser v. Randall*, 357 U.S. 513, 518-19 (1958). This principle, known as the unconstitutional conditions doctrine, acknowledges that the government, having no obligation to furnish a benefit, nevertheless cannot force a citizen to choose between a benefit and free speech. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 59-60 (2006); *Perry*, 408 U.S. at 597. Such a choice will tend to penalize a constitutionally-protected right.

Courts often struggle with when to apply the unconstitutional conditions doctrine, and the doctrine's contours remain unclear despite its long history. *See Dolan v. City of Tigard*, 512 U.S. 374, 407 n.12 (1994) (Stevens, J., dissenting). Despite this unfortunate lack of clarity, the unconstitutional conditions doctrine

No. 12-50377

does involve a clear threshold premise: "[A] funding condition cannot be unconstitutional if it could be constitutionally imposed directly." *Rumsfeld*, 547 U.S. at 59-60 (citing *Speiser*, 357 U.S. at 526). Thus, if the government could directly achieve the result in question, then it is unnecessary to assess the result within the unclear framework of the unconstitutional conditions doctrine. *Id.* at 60.

### B.

The district court relied on the unconstitutional conditions doctrine without questioning whether any aspects of the THHSC regulations achieve a direct result permitted by the First Amendment. Particularly, the district court analyzed the regulations as a whole, instead of separately parsing the restriction on promoting elective abortions, and then the restriction on affiliating with entities that promote elective abortions. Because the legal principles applicable to promotion and affiliation differ, it is important to assess these restrictions separately. This separate assessment results in both a clear consideration of the threshold premise of the unconstitutional conditions doctrine and restraint, which should always accompany a remedy as extraordinary as a preliminary injunction. *Lakey*, 667 F.3d at 574.

### 1.

We begin with the restriction on promoting elective abortions. The THHSC regulations exclude health care providers from the WHP who "promote[] elective abortions as . . . abortion facilit[ies] licensed under [the] Health and Safety Code." 1 Tex. Admin. Code § 354.1363(a)(2)(A). This restriction, in a sense, imposes a speech-based condition on organizations receiving the benefit of WHP funding. If an organization wishes to receive WHP funding, it may not "[a]dvocate[] or popularize[] [elective abortions] by, for example, advertising or publicity" as a licensed abortion facility. *Id.* § 354.1362(6).

No. 12-50377

Although this restriction functions as a speech-based funding condition, it also functions as a direct regulation of the content of a state program, and is therefore constitutional under the reasoning of *Rust v. Sullivan*, 500 U.S. 173 (1991).  In *Rust v. Sullivan*, the Supreme Court considered federal regulations limiting the abortion-related speech of clinics receiving funds under Title X of the Public Health Service Act.  500 U.S. at 178.  The disputed regulations broadly prohibited a Title X project from promoting or advocating abortion as a method of family planning, including advocating abortion in the political arena. *Id.* at 180.  The Court upheld the regulations, reasoning that the government could disfavor abortion within its own subsidized program, and that exclusively subsidizing non-abortion family planning speech did not penalize abortion speech.  *Id.* at 192-93.  Subsequent opinions have recognized *Rust* as affirming the government's authority to enact viewpoint-based restrictions on speech when the government is, in effect, the speaker.  *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 540-41 (2001); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995).  "[W]hen the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes." *Rosenberger*, 515 U.S. at 833 (citing *Rust*, 500 U.S. at 194).

Texas's restriction on promoting elective abortions directly regulates the content of the WHP as a state program.  The policy expressed in the WHP is for public funds to subsidize non-abortion family planning speech to the exclusion of abortion speech.  § 1.19(b), 2011 Tex. Gen. Laws at 335.  Texas's authority to promote that policy would be meaningless if it were forced to enlist organizations as health care providers and message-bearers that were also abortion advocates. The authority of Texas to disfavor abortion within its own subsidized program is not violative of the First Amendment right, as interpreted by *Rust v. Sullivan*. Consequently, Texas's choice to disfavor abortion does not unconstitutionally penalize the appellees' speech.

No. 12-50377

We hold that Texas may deny WHP funds from organizations that promote elective abortions.[4] This specific restriction on the breadth of the program functions as a direct regulation of the definitional content of a state program, and it is therefore unnecessary to examine it within the framework of the unconstitutional conditions doctrine. The district court erred in enjoining this provision of the regulations.

2.

We now briefly turn to the restriction on affiliating with entities that promote elective abortions. The THHSC regulations exclude health care providers from the WHP who are "affiliate[s] of . . . corporate entit[ies] that . . . promote[] elective abortions." 1 Tex. Admin. Code § 354.1363(a)(2)(B). Under the regulations' definitions, affiliation results from common ownership, management, or control; franchise; or authorization to use identifying marks. *Id.* § 354.1362(1).

We will only address one prong of the definition of affiliate: the authorization to use identifying marks. We address this prong because it implicates the same conduct as the restriction on promoting elective abortions, which we have already addressed. Using a pro-abortion mark is, after all, a way of promoting abortion.[5]

Texas's authority to directly regulate the content of its own program necessarily includes the power to limit the identifying marks that program grantees are authorized to use. Identifying marks represent messages, and

---

[4] To be clear, our holding is limited to the organizations that are the appellees in this appeal and the individuals working for the organizations when they are acting for the organizations. Our holding does not address the speech of the individuals that make up those organizations when they are engaging in speech and other conduct outside their duties with the organizations.

[5] It is beyond question that identifying marks are a form of speech. *See Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n.6 (5th Cir. 1996).

authorization to use a particular mark is authorization to promote that mark's message. If the organizations participating in the WHP are authorized to use marks associated with the pro-abortion point of view—like the Planned Parenthood mark—Texas's choice to disfavor abortion is eviscerated, just as it would be if the organizations promoted abortion through pamphlets or video presentations.

Whether an identifying mark communicates a pro-abortion message as clearly as other speech is not a controlling factor for the purposes of this analysis. "When the government disburses public funds to private entities to convey a governmental message, it may take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted by the grantee." *Rosenberger*, 515 U.S. at 833. It takes no expansion of the mind to understand how Texas's message disfavoring abortion would be garbled if health care providers participating in the WHP could identify and poster their clinics with abortion-related identifying marks.

We therefore hold that Texas may deny WHP funds from organizations that promote elective abortions through identifying marks. The restriction on identifying marks is really a limit on promoting elective abortions, and it is therefore valid as a direct regulation of the content of a state program. Again, because this restriction is lawful as a direct regulation of speech, we have no reason to examine it within the framework of the unconstitutional conditions doctrine. The district court erred in enjoining this provision of the regulations.

The other prongs of the THHSC regulations' definition of affiliate—read in conjunction with the regulations' restriction on affiliating with entities that promote elective abortions—do more than limit the promotion of abortion. They limit affiliation in a more conventional sense. 1 Tex. Admin. Code § 354.1362(1). The regulations' restriction on affiliation is problematic because it is not a direct regulation of the content of a government program. Speech that organizations

No. 12-50377

carry on in other capacities through affiliated entities is not speech within a government program in which the government has a direct say. *See Rust*, 500 U.S. at 196.

For now, however, we decline to examine the restriction on affiliation and its potential constitutional infirmities. As stated above, the district court assessed the regulations as a whole, making no distinction between promoting and affiliating, and its assessment resulted in an erroneous application of the unconstitutional conditions doctrine. It is not clear whether the district court would have preliminarily enjoined select provisions of the regulations or not, and we think it better simply to vacate the injunction in its entirety in this respect and, on remand, allow the district court to decide that question for itself.

## C.

Before concluding, we must briefly address the district court's holding that the THHSC regulations likely deny the appellees the equal protection of the laws. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The district court reasoned that the regulations likely violate equal protection because they allow affiliation with abortion-promoting hospitals, but not with abortion-promoting clinics, and therefore do not treat all health care providers equally. 1 Tex. Admin. Code § 354.1363(a).

Within its equal protection analysis, the district court assumed that the regulations abridge free speech, and that because the regulations abridge free speech, all classifications within them should be subject to heightened constitutional scrutiny. *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 547 (1983) ("Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right, such as freedom of

11

speech . . . .").  The district court's free speech holding therefore influenced its equal protection holding.

Because the free speech holding was in error for the reasons explained above, we cannot assume that strict scrutiny should apply to the classifications contained within the regulations.  Nor can we assume that the district court would reach the same conclusion on equal protection applying some lesser tier of constitutional scrutiny.

IV.

The appellees administer a Texas program under the authority of a Texas statute and its regulations, and they receive public funds in return.  Texas may limit what the appellees communicate in this capacity.  The appellees have not made a clear showing that they are likely to succeed in demonstrating that the THHSC regulations' restriction on promoting elective abortions violates their First Amendment rights.  Because we have determined that the appellees failed to demonstrate a substantial likelihood of success on the merits, we do not need to address the remaining elements necessary for preliminary injunctive relief. *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

On remand, the district court is to reconsider the constitutionality of the restriction on affiliating with entities that perform elective abortions, specifically the prongs defining affiliation based on franchise and common ownership, management, or control, and to rule accordingly.

We VACATE the preliminary injunction and REMAND for further consideration not inconsistent with this opinion.

VACATED and REMANDED.