# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2014

Lyle W. Cayce
Clerk

No. 13-20206

UNITED STATES OF AMERICA; THE STATE OF TEXAS, ex rel, ABBY KRISTEN JOHNSON,

Plaintiff - Appellant

v.

PLANNED PARENTHOOD OF HOUSTON AND SOUTHEAST TEXAS, INCORPORATED,

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-3496

Before KING, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:*

Abby Kristen Johnson ("Johnson"), acting as relator on behalf of the United States and the State of Texas, brought suit against Planned Parenthood Gulf Coast, a.k.a. Planned Parenthood of Houston and Southeast Texas, Inc. ("Planned Parenthood"), alleging that it engaged in fraudulent billing practices in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20206

*et seq.*, and the Texas Medicaid Fraud Prevention Act ("TMFPA"), TEX. HUM. RES. CODE § 36.001, *et seq.* Planned Parenthood filed a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, arguing that the district court lacked subject matter jurisdiction because of a previously-filed *qui tam* suit that alleged the same fraudulent scheme. The district court granted the motion and denied Johnson's Federal Rule of Civil Procedure 60(b)(6) motion filed after the court had dismissed the case. Johnson timely appealed. We AFFIRM.

## I. Factual and Procedural Background

Johnson, a former Planned Parenthood employee, sued Planned Parenthood, alleging that it repeatedly filed various false, fraudulent, and/or ineligible claims for Medicaid reimbursements with both state and federal billing agencies. Specifically, she alleged that Planned Parenthood: (a) falsely billed the Texas Women's Health Program[1] ("TWHP") for non-reimbursable procedures and services performed during a client visit when the primary purpose of the visit was not for contraceptive management as required by the TWHP; (b) falsely billed the TWHP for unperformed laboratory tests, and supported such false billings with false notations in client charts; (c) falsely billed non-contraceptive management-related procedures and services by making false notations in client charts and not referring those clients to another physician or clinic for treatment; (d) filed more than 87,000 false claims with the TWHP, from which it wrongfully received and retained reimbursements totaling at least $5,701,055; and (e) acknowledged to Johnson and other employees that it would conceal from the TWHP that it had received improper reimbursements from it and would retain such reimbursements.

---

[1] The TWHP is a Title XIX Medicaid waiver program jointly funded by the federal and state governments. *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 346 (5th Cir. 2012). At the time Johnson filed this complaint, the TWHP was largely federally funded. *Id.*

No. 13-20206

Prior to Johnson's action, Karen Reynolds ("Reynolds"), acting as relator on behalf of the United States and the State of Texas, filed a *qui tam* suit in the Eastern District of Texas against Planned Parenthood for treble damages and civil penalties also arising from alleged fraudulent billing activity in violation of the FCA and TMFPA. Reynolds alleged the following conduct: (a) billing for medical services not rendered; (b) billing for unnecessary medical services; (c) creating false information relative to billing in medical records; (d) creating false documentation in an attempt to demonstrate compliance with various governmental program requirements; and (e) conspiring to violate the FCA and TMFPA. *See United States ex rel. Karen Reynolds v. Planned Parenthood of Hous. & Se. Tex., Inc., et al.*, Case No. 9:09-cv-00124-RC. After Johnson's Original Complaint and Second Amended Complaint were unsealed, Planned Parenthood moved to dismiss Johnson's action, alleging that the district court lacked subject matter jurisdiction over the case because the action is barred under the FCA's and TMFPA's "first-to-file" bar. The district court granted Planned Parenthood's motion to dismiss, and Johnson timely appealed.

Following the district court's order dismissing Johnson's Second Amended Complaint, the *Reynolds* case settled (hereinafter, "Reynolds settlement"). Johnson then filed a Rule 60(b)(6) motion, claiming that the Reynolds settlement originally was going to include language acknowledging that the fraud scheme alleged in Reynolds' complaint was distinct from the scheme alleged in Johnson's complaint. Such language was never included in the settlement. The district court denied her motion, and Johnson amended her notice of appeal to include the district court's denial of her Rule 60(b)(6) motion.

3

No. 13-20206

## II. Discussion

### A. Motion to Dismiss

We review the district court's dismissal for lack of subject matter jurisdiction *de novo* as to the application of the law and for clear error as to any disputed factual findings. *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009). Subject matter jurisdiction is determined at the time the action is brought. *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 762 (5th Cir. 1996). The plaintiff has the burden of establishing subject matter jurisdiction. *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012).

Under certain circumstances, the FCA permits "suits by private parties on behalf of the United States against anyone submitting a false claim to the government[.]" *Branch*, 560 F.3d at 376 (citation and internal quotation marks omitted). The FCA's *qui tam* provisions seek to encourage suits from whistleblowers with "genuinely valuable information," while also discouraging "opportunistic plaintiffs from filing parasitic lawsuits[2] that merely feed off previous disclosures of fraud." *Id.* To achieve these goals, there are a number of jurisdictional limits on the FCA's *qui tam* provisions, including its first-to-file bar, which provides that the district court lacks subject matter jurisdiction to hear the claim if a previously-filed suit contains the same "material elements" or "essential facts" as the later-filed suit. *See id.* at 377–78. The focus is on whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim. *See id.* at 378. The first-to-file bar is a relatively broad bar to later-filed actions. *See, e.g., Branch*, 560

---

[2] Nothing in this record suggests that Johnson's lawsuit was "parasitic." Indeed, there is no indication that Johnson was aware of Reynolds's lawsuit when Johnson filed her suit, and it appears Johnson's suit was based upon her own knowledge. However, the first-to-file bar still applies. *See Branch*, 560 F.3d at 377-78. Any resulting unfairness is a matter for Congress, not this court.

F.3d at 377 (noting that "a 'broader bar' furthers the purpose of the FCA's *qui tam* provisions by ensuring a 'race to the courthouse among eligible relators, which may spur the prompt reporting of fraud'") (citation omitted). The TMFPA has a similar first-to-file bar.[3]

Reynolds' complaint alleged that Planned Parenthood fraudulently billed Title XIX Medicaid as well as other federal and state programs, but did not specifically mention any particular Medicaid programs. The Johnson complaint, on the other hand, specifically alleged that Planned Parenthood falsely billed the TWHP. However, because both the Johnson and Reynolds complaints allege that Planned Parenthood's billing practices caused them to fraudulently receive funding from United States and Texas Medicaid programs, it is likely that an investigation into the allegations contained in Reynolds' complaint would have uncovered the same fraudulent activity alleged by Johnson's complaint, especially given that the TWHP is a federally-funded Texas Medicaid program. *See Suehs*, 692 F.3d at 346. Considering that this court has previously held that fraudulent filings occurring in different states would be discovered through a thorough investigation into the filing system of an insurance company, it is likely that an investigation into fraudulent Medicaid filings would uncover fraudulent filings for related programs, as the alleged fraudulent activity occurred within the same offices. *See Branch*, 560 F.3d at 378.[4]

---

[3] The FCA's first-to-file bar states that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The TMFPA's first-to-file bar operates the same way as the FCA's first-to-file bar. *See* TEX. HUM. RES. CODE § 36.106 ("A person other than the state may not intervene or bring a related action based on the facts underlying a pending action brought under this subchapter."). Neither side argues that the two statutes should be applied differently in this case.

[4] *Branch* concerned a first-filed claim alleging insurance fraud arising out of wind damage and flood damage claims for Mississippi properties. 560 F.3d at 374. The second

No. 13-20206

Johnson's second argument is that her allegations of fraud were different in kind because Reynolds alleged that fraud involved billing for medical services not performed whereas Johnson alleged that the services were performed but improperly coded.  However, both complaints essentially allege that fraud was committed by altering patient records and billing Medicaid programs for services other than those rendered, and the additional, specific facts added by Johnson are not sufficient to make the alleged fraudulent activity sufficiently distinct to avoid the first-to-file bar.  *See Branch*, 560 F.3d at 378 (holding that the relator cannot avoid the first-to-file bar "by simply adding factual details . . . to the essential or material elements of a fraud claim against the same defendant").[5]

B. Denial of Rule 60(b)(6) Motion

To prevail in a Rule 60(b)(6) motion, the plaintiff must show that "extraordinary circumstances" apply.  *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012).  Johnson's Rule 60(b)(6) motion purports to make the district court "aware of developments in the Reynolds case," specifically that Johnson's counsel participated in settlement discussions in which the parties agreed to state that the Reynolds settlement did not apply to Johnson's complaint.

---

complaint contained identical allegations, except that it also alleged facts concerning ten additional properties in Louisiana.  *Id.* at 378.  Branch was precluded from bringing these claims under the first-to-file bar even though they alleged different geographic locations because an investigation into the fraudulent scheme alleged in the first complaint would result in finding identical fraudulent behavior, even across geographic locations.  *Id.*

[5] In passing, Johnson argues that because Planned Parenthood had moved to dismiss Reynolds' complaint for failure to state a claim under Rule 12(b)(6), that complaint could not have sufficiently placed the government on notice of any fraudulent scheme, much less the one she alleged.  Whatever the merits of such an argument in a hypothetical case of a "bare bones" complaint, we conclude it lacks merit as to the particular complaint filed by Reynolds.  *See Branch*, 560 F.3d at 378 n.10.

No. 13-20206

We have previously held that a settlement is irrelevant to the first-to-file analysis because the first-to-file analysis requires comparison of the two original complaints. *See United States ex rel. Smart v. Health*, No. 13-40785, 2014 WL 1474282, at *1 (5th Cir. April 16, 2014) (unpublished);[6] *see also United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011) (holding that the original complaint is the appropriate complaint for determining whether the FCA's public disclosure jurisdictional bar applies). Therefore, the fact of the settlement negotiations does not rise to the level of an extraordinary circumstance because it would not alter the analysis performed by the district court. *See Adams*, 679 F.3d at 319. Accordingly, the district court did not abuse its discretion in denying the Rule 60(b)(6) motion. *See Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993).

AFFIRMED.

---

[6] Although *Smart* is not controlling precedent, we cite it for its persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

7