# United States Court of Appeals
## For the First Circuit

No. 11-1501

LEYDA MULERO-ABREU ET AL.,

Plaintiffs, Appellants,

v.

PUERTO RICO POLICE DEPARTMENT ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Frank D. Inserni Milam for appellants.
Susana I. Peñagaricano-Brown, Assistant Solicitor General,
Puerto Rico Department of Justice, with whom Luis R. Román-Negrón,
Solicitor General, and Jeanette Collazo Ortiz, Deputy Solicitor
General, were on brief, for appellees.

March 29, 2012

**SELYA, Circuit Judge.** This appeal illustrates the folly of treating case-management orders as polite suggestions rather than firm directives. The tale follows.

After the district court ordered the plaintiffs to answer interrogatories and produce documents by a date certain, the plaintiffs — despite receiving several extensions of the due date and two warnings about the consequences of not meeting it — failed to comply. True to its word, the court dismissed the action as a sanction for noncompliance. It thereafter refused to reconsider. The plaintiffs appeal. We affirm.

## I. BACKGROUND

The plaintiffs, appellants here, are Leyda Mulero-Abreu (Mulero), her husband Victor Reyes-Raspaldo, and their conjugal partnership. Invoking federal question and supplemental jurisdiction, see 28 U.S.C. §§ 1331, 1367, the plaintiffs brought suit in the federal district court against the Puerto Rico Police Department (the Department), sundry departmental employees, and the Commonwealth of Puerto Rico.

In their complaint, the plaintiffs alleged violations of their constitutional and statutory rights. Because this appeal turns on the procedural history of the case, we eschew any detailed inventory of either the plaintiffs' claims or the underlying facts. It suffices to say that the plaintiffs' complaint relates to

Mulero's allegations of sexual harassment and emotional abuse arising out of her employment by the Department.

The district court issued an initial scheduling order, see Fed. R. Civ. P. 16(b), closing discovery as of November 18, 2010. When the defendants' lead trial attorney encountered a serious emergency, the district court, without objection, reset the close of discovery to January 28, 2011.

In November, the defendants served the plaintiffs with interrogatories and requests for production of documents. See Fed. R. Civ. P. 33, 34. Although sent that month both by facsimile and certified mail, the mailed copy was not received by the plaintiffs until December 20.[1]

As the new discovery closure date approached, all of the parties sought to extend the deadline. These requests were driven primarily by the involvement of the plaintiffs' counsel in a criminal trial (a circumstance that made it difficult to take depositions during the month of January). The district court obliged, extending the discovery closure date to February 28, 2011.

On February 24, the plaintiffs moved to extend this deadline for an additional thirty days. They represented that their lawyer had been busy and had no free time to devote to their case. They attached to their motion a letter from defense counsel

---

[1] The parties dispute whether the facsimile transmission was received earlier. This dispute is not material to the issues on appeal and, thus, we leave it unresolved.

stating that the defendants did not object to the requested extension. The final paragraph of this letter caught the court's attention. It noted that the plaintiffs had yet to respond "to the interrogatories and request for production of documents that were sent . . . several months ago" even though the response period prescribed by the Civil Rules had long since passed. See Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A).

Alerted to a delay in the discovery process, the court entered a pointed order that pushed back the discovery closure date to March 25. However, the court embellished the extension with an aposematic warning:

> Plaintiffs will provide the answers to all outstanding interrogatories and requests for production of documents no later than February 28, 2011. Plaintiffs are precluded from raising any objection to any question in any interrogatory or any request for production of documents. . . . [P]laintiffs' [failure] to answer the interrogatories and requests for production of documents by, February 28, 2011, will result in the dismissal of the suit, with prejudice.

February 28 came and went without any discernible progress on the discovery front. On March 1, the defendants filed an informative motion, apprising the district court that the plaintiffs had neither answered the interrogatories nor produced the documents. Two days later, the plaintiffs filed an opposition, which accused the defendants of discovery misconduct and represented that the interrogatory answers and requested documents

would be supplied within the next ten days. The opposition indicated that the reason for the delay was Mulero's need to "rest for [a] few days" after her "exruciating" February 28 deposition.

The district court took the plaintiffs at their word and extended the deadline for compliance by ten days. Its order provided that:

> Plaintiffs will answer any outstanding interrogatories and produce all documents requested no later than March 14, 2011. NO EXTENSIONS WILL BE ALLOWED. No objection to any interrogatory or request for production of documents will be allowed. Plaintiffs have waived any and all objections.

In addition, the court repeated its earlier admonition that noncompliance would lead to dismissal of the case.

This deadline, like the previous deadlines, passed without any sign of compliance by the plaintiffs. On March 16, the defendants filed a second informative motion, recounting that the interrogatories remained unanswered and that the documents had not been produced. The next day the court, exercising its authority under Federal Rule of Civil Procedure 16(f)(1)(C), dismissed the action with prejudice. Mulero-Abreu v. P.R. Police Dep't, 272 F.R.D. 313, 315 (D.P.R. 2011).

A week later, the plaintiffs moved for reconsideration. They attached to their motion some correspondence that their lawyer had sent to defense counsel, including two letters discussing the discovery materials. The first, sent in January, stated

-5-

conclusorily that the interrogatory answers were contained in Mulero's deposition, thus rendering the interrogatories repetitive and onerous. The second, sent in February, reiterated that view and added that the requested documents were contained in more than 150 pages of materials already furnished as part of the plaintiffs' automatic disclosure obligations. See Fed. R. Civ. P. 26(a)(1). The answers to interrogatories and an index of the overdue documents were attached to this motion. The district court summarily denied the motion. A subsequent motion for reconsideration was likewise denied. This timely appeal followed.

## II. ANALYSIS

Administering a bustling docket is hard work. In recognition of the difficulty of this task, "[t]he Civil Rules endow trial judges with formidable case-management authority." Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). One source of this authority is Rule 16(f), which authorizes a district court to issue, sua sponte, "any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). This provision incorporates by reference a menu of sanctions enumerated in Rule 37, including "dismissing the action . . . in whole or in part." Fed. R. Civ. P. 16(f)(1), 37(b)(2)(A)(v).

Of course, dismissal does not follow automatically from every failure to abide by a case-management order. When a party

fails to obey such an order, the selection of an appropriate sanction is peculiarly within the province of the district court. In making this selection, a district judge "must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets." Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003). Given the trial court's "intimate knowledge of the variables that enter into the equation, appellate review of sanctions orders is deferential." Id. (citation omitted); see Jensen v. Frank, 912 F.2d 517, 524 (1st Cir. 1990) (holding that a Rule 16(f) determination is reviewable for abuse of discretion). "[W]e focus our review particularly on whether a material factor deserving significant weight was ignored, whether an improper factor was relied upon, or whether when all proper and no improper factors were assessed the court made a serious mistake in weighing them." United States v. One 1987 BMW 325, 985 F.2d 655, 657-58 (1st Cir. 1993) (quoting Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988)) (alterations and internal quotation marks omitted). Absent an error of law — and we discern none here — the party challenging a sanction faces an uphill climb in persuading a reviewing court that the trial court abused its discretion. Id. at 657.

Against this backdrop, we take the measure of the plaintiffs' asseverational array. The common thread that runs

throughout their claims is their strident criticism of the defendants' attorneys.

To begin, the plaintiffs point out that opposing counsel did not attach a certification of good-faith attempts at resolution to either of their informative motions. This is true as far as it goes — but it does not get the plaintiffs anywhere. Although both the Civil Rules and the district court's local rules require a party filing a motion to compel discovery to attach a certification that a good-faith effort has been made to resolve the discovery dispute without judicial intervention, see Fed. R. Civ. P. 37(a)(1); D.P.R. Civ. R. 26(b), the defendants did not file any motions to compel. Rather, the seminal filing was the plaintiffs' request for an extension, which contained a letter that prompted the court to act sua sponte. The defendants' subsequent filings simply notified the court that the plaintiffs had not met successive court-imposed deadlines. There is no requirement in the Civil Rules, the local rules, or elsewhere that a party must attach a certification of good-faith attempts at dispute resolution to an informative motion.[2]

---

[2] This is not merely a matter of nomenclature. Neither of the defendants' informative motions asked the court for an order compelling the plaintiffs to make discovery. And even though their second motion requested an order of dismissal for the plaintiffs' failure to comply, its primary function was to inform the court that the plaintiffs had missed yet another deadline.

-8-

More broadly, the plaintiffs denigrate opposing counsel for supposedly acting in bad faith throughout the discovery process. These animadversions do not advance their cause. While it is axiomatic that parties must act in good faith during discovery, see, e.g., Fed. R. Civ. P. 26(g)(1), the plaintiffs have not explained how the defendants' bad faith bears any relationship to their own refusal to obey the district court's serial orders. In law as in life, two wrongs do not make a right.

Relatedly, the plaintiffs contend that the defendants intentionally misrepresented to the district court that the interrogatories had been outstanding since November of 2010 when in reality they were not received until sometime in December. The plaintiffs assert that this misrepresentation was material to the court's decision to dismiss the case. This assertion is baseless.

The record reflects that the defendants accurately explained the entire chronology of events in their first informative motion. There was no misrepresentation, and the court was fully aware of the chronology when it ruled. Moreover, the plaintiffs were given ample time to effect discovery. Their attempt to link the delay in receiving the mailed copy of the interrogatories to their failure to comply borders on the chimerical.

Taking a different tack, the plaintiffs maintain that they fulfilled their discovery responsibilities when they sent

letters to the defendants characterizing the interrogatories and requests for production as repetitive and onerous and informing the defendants that the information sought was contained in Mulero's deposition and in a trove of documents previously produced. The plaintiffs claim that in light of these letters, the defendants acted in bad faith by telling the court that the plaintiffs were derelict in their discovery obligations. Because the defendants never made the court aware of these assertions, this thesis runs, the court mistakenly dismissed the action.

This thesis stands logic on its ear. The plaintiffs provide no coherent explanation as to why it was the defendants' burden to make the plaintiffs' arguments for them. The plaintiffs never told the court at any time before the order of dismissal entered that they believed that they had satisfied their discovery obligations, and their actions belie this newly advanced position. Long after sending these letters, the plaintiffs offered excuses for noncompliance and promised the court that the overdue materials would be forthcoming. Given this sequence of events, it strains credulity to imagine that even the plaintiffs believed that the letters were sufficient to effect compliance.

If more were needed — and we do not think that it is — the responses contained in the letters were manifestly inadequate. To "answer" the interrogatories, the plaintiffs merely referred the defendants to Mulero's deposition. But answering interrogatories

simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33. See, e.g., Union Pac. R.R. v. Larkin, 229 F.R.D. 240, 243 (D.N.M. 2005); Int'l Mining Co. v. Allen & Co., 567 F. Supp. 777, 787 (S.D.N.Y. 1983). The plaintiffs' blanket objection to all of the interrogatories — including those asking for basic information — is equally impuissant. See Fed. R. Civ. P. 33(b)(3)-(4) (explaining that "[t]he grounds for objecting to an interrogatory must be stated with specificity" and all interrogatories must be answered to the extent they are not objectionable); see also Josephs v. Harris Corp., 677 F.2d 985, 991-92 (3d Cir. 1982) (concluding that the plaintiff's broad objection to all interrogatories failed to meet the requirements of the Civil Rules).

The same flaws mar the plaintiffs' invitation that the defendants sift through documents previously delivered in search of the documents that they requested under Rule 34. At the very least, the defendants were entitled to responses or objections addressed to "each item or category [of items]." Fed. R. Civ. P. 34(b)(2)(B). The plaintiffs never supplied such an index, suggesting instead that the defendants find the needle in the haystack.

Next, the plaintiffs argue that the sanction is too harsh. They insist that the surrounding circumstances cut in favor

of a milder sanction because they were generally compliant with the court's schedule and they had good excuses for missing the discovery deadlines.

The premise on which this argument rests is correct. The totality of the circumstances should be considered when assessing the appropriateness of a discovery sanction. HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 917 (1st Cir. 1988). But the conclusion that the plaintiffs would have us draw from this premise does not follow. We explain briefly.

The fact that the plaintiffs met other deadlines in the course of the case does not inoculate them against the sanction of dismissal. Their failure to provide the required responses to both interrogatories and requests for production was in flagrant disregard of multiple court orders. We have said before, and today reaffirm, that "[i]f [the court] sets a reasonable due date, parties should not be allowed . . . painlessly to escape the foreseeable consequences of noncompliance." Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990).

Here, moreover, the plaintiffs were twice explicitly warned that if they neglected to comply by a specified date, their case would be dismissed. The plaintiffs turned a deaf ear to those warnings. They did so at their peril and they cannot now be heard to say that they were somehow blindsided because the district court said what it meant and meant what it said.

-12-

At any rate, the plaintiffs' entreaty that they had good reasons for missing the court-imposed deadlines is unpersuasive. They claim that Mulero was too tired after her emotionally draining deposition to provide responses and that their attorney was too busy to help. Neither claim offers them much shelter.

Mulero's deposition was taken on February 28 and the plaintiffs have not explained how that could have affected Mulero's ability to comply in January (when the responses were originally due). Nor have they explained (say, by proffering a physician's report) how Mulero's alleged incapacity could have lasted for two full weeks after the deposition (when the final deadline expired). Finally, they have not explained why they missed the last deadline — a deadline that they had pronounced themselves able to meet.

The demands of the attorney's other clients do not improve the picture. It is settled beyond hope of contradiction that "[t]he fact that an attorney has other fish to fry is not an acceptable reason for disregarding a court order." Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 5 (1st Cir. 2002).

The plaintiffs fall back on the hoary principle that "[d]ismissal with prejudice is a harsh sanction which runs counter to our strong policy favoring the disposition of cases on the merits." Figueroa Ruiz v. Alegria, 896 F.2d 645, 647 (1st Cir. 1990) (citations and internal quotation marks omitted). But even though the sanction of dismissal is reserved for a limited number

-13-

of cases, it must be available so the trial courts may punish and deter egregious misconduct.  See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, a P'ship v. Medfit Int'l, Inc., 982 F.2d 686, 692 (1st Cir. 1993).  "[D]isobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct."  Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).  This is such a case: the plaintiffs, disregarding explicit warnings, failed to comply with a succession of court orders; other time parameters were pushed back as the court waited in vain for the plaintiffs to comply; and the defendants' trial preparations were stalled.  Under these circumstances, dismissal was a condign sanction.[3]  See id. at 83.

This leaves only the district court's rejection of the motions for reconsideration.  A district court's decision to deny a motion for reconsideration engenders review for abuse of discretion.  Bennett v. Saint-Gobain Corp., 507 F.3d 23, 34 (1st Cir. 2007).  For such a motion to succeed, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law."  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  We already have considered the materials that the plaintiffs attached to their motions for reconsideration and

---

[3]  The  fact  that  the  plaintiffs  furnished  the  requested material a week after the case was dismissed does not change this calculus.  See Young, 330 F.3d at 83.

-14-

found them wanting. Similarly, the record contains no sign of legal error. Thus, the denials of reconsideration were well within the compass of the trial court's discretion.

## III. CONCLUSION

We need go no further. The district court waited patiently for the overdue discovery, extended the due date on more than one occasion, and twice warned the plaintiffs that it would dismiss the case if they continued to stonewall. The court set the last deadline in conformity with the plaintiffs' volunteered statement of how long it would take them to comply. When that statement proved to be an empty promise, the court dismissed the case. For the reasons elucidated above, we see neither error nor abuse of discretion in that action.

**Affirmed**.