# Supreme Court of Texas

════════

No. 24-1062

════════

In re Dr. Robert Tafel, et al.,

*Relators*

════════════════

On Petition for Writ of Mandamus

════════════════

**Argued December 3, 2025**

JUSTICE BUSBY delivered the opinion of the Court, in which Justice Lehrmann, Justice Devine, Justice Bland, Justice Young, and Justice Sullivan joined, and in which Chief Justice Blacklock, Justice Huddle, and Justice Hawkins joined except as to Part III.A.

JUSTICE BUSBY filed a concurring opinion.

JUSTICE BLAND filed a concurring opinion, in which Chief Justice Blacklock and Justice Young joined.

JUSTICE YOUNG and JUSTICE SULLIVAN filed a concurring opinion.

The Texas Health Care Program Fraud Prevention Act allows private persons to bring civil actions for fraud that harms the Texas Medicaid program. When an action leads to a recovery for the State, the private person bringing the action—the *qui tam* relator—receives a portion of the proceeds in return for their efforts. Here, the *qui tam* relator died while the Medicaid fraud suit was pending, and this

mandamus petition asks us to decide whether the pending suit must therefore be dismissed.

We hold that pending *qui tam* claims under the Act survive the relator's death. Although prosecuted by a private party, these claims establish liabilities to the State for benefits wrongfully obtained from its health care programs. Because claims under the Act are on behalf of the State, they do not extinguish upon the death of the private relator prosecuting them.

We are also asked to decide whether this suit is prevented from proceeding by another pending *qui tam* action or the public disclosure of Medicaid fraud allegations in that action. We hold the suit can proceed. The defendants failed to establish conclusively that this suit is based on the facts underlying the separate pending action, and that action was not a prior public disclosure of the relevant fraud allegations. Finally, we hold that the doctrine of dominant jurisdiction does not require abatement of this suit. We therefore deny the petition.

## BACKGROUND

### A. Dr. Ludlow sues Bear Creek alleging a Medicaid fraud scheme he discovered in 2019.

Dr. Scott Ludlow filed the suit underlying this mandamus proceeding in August 2021. The defendants are Dr. Robert Tafel, a group of Dallas-area dental practices operating under the name Bear Creek Family Dentistry, and a related management company and professional associations (collectively "Bear Creek").

Dr. Ludlow began working for Bear Creek as a dentist in 2011 and was ultimately promoted in February 2019 to become its Chief

2

Dental Officer. Before that promotion, he spent his time at Bear Creek treating patients and supporting other pediatric dentists. After the promotion, Dr. Ludlow asserted, he took on administrative duties that included audit reviews, reviewing internal charts and conducting peer reviews of other Bear Creek dentists, and assisting in compliance matters. As his administrative responsibilities as Chief Dental Officer expanded after February 2019, Dr. Ludlow spent more time on clinical compliance issues and performing chart reviews of Bear Creek dentists. This is when Dr. Ludlow claims he learned of Bear Creek's alleged fraud, waste, and abuse affecting the Texas Medicaid program.

According to Dr. Ludlow, individual Bear Creek dentists performed unnecessary treatments on patients as part of a concerted scheme directed by Dr. Tafel for which Bear Creek sought reimbursement from the Texas Medicaid program:

> The primary focus of Dr. Tafel and his management team was to pressure dentists to excessively utilize dental procedures under certain procedures codes established by the American Dental Association ("ADA Codes"). The main codes Dr. Tafel pressured dentists to use were ADA Codes for tooth fillings or "Class 1 Fillings." The ADA Codes for such fillings were D2391 and D2392. In face-to-face "production meetings," Dr. Tafel or someone from the management team would pressure and intimidate dentists that he felt were under-utilizing these ADA Codes.

(Cleaned up.) Dr. Ludlow also claimed that Dr. Tafel hired new dentists with student-loan debt that he compensated based on collections, making them more likely to follow these instructions. Dr. Ludlow alleged that this scheme resulted in Bear Creek billing the Texas Medicaid program for fillings that were performed but not medically

3

necessary and later billing to redo those fillings, which had been performed in a hurried manner with low-quality materials.

### B. Bear Creek seeks dismissal based on a 2012 Medicaid fraud action by another *qui tam* relator and on Dr. Ludlow's death.

Bear Creek filed an amended plea to the jurisdiction, arguing that the same allegations against it were already being litigated in a separate pending action in Travis County. Thus, according to Bear Creek, Dr. Ludlow's suit could not proceed under provisions of the Texas Health Care Program Fraud Prevention Act addressing earlier-filed actions and publicly disclosed allegations. Bear Creek alternatively moved to abate and argued that the Travis County court presiding over the separate action had dominant jurisdiction over Dr. Ludlow's suit.

The separate pending action was a Medicaid fraud suit that Joshua LaFountain brought nine years earlier against many of the Bear Creek parties. LaFountain filed his suit in 2012 in Travis County (Cause No. D-1-GV-12-000277), and he included claims against an affiliate of Xerox Corporation that processed the reimbursement requests. *State v. Ellis*, 681 S.W.3d 501, 504, 506 (Tex. App.—Austin 2023, no pet.). LaFountain alleged a similar scheme that Dr. Tafel directed dentists to perform invasive dental treatments regardless of medical necessity, especially pulpotomies, stainless steel crowns, and deep cleaning or "scaling," resulting in Bear Creek dental practices becoming state leaders in amounts billed to Medicaid for these procedures. Like Dr. Ludlow, LaFountain alleged that Bear Creek dentists were receptive to these instructions because they were in debt

4

following dental school and being paid by Bear Creek based on a percentage of collections.

LaFountain's action was one of three filed under the Act in early 2012 against Xerox Corporation or its affiliates concerning alleged Medicaid fraud in the provision of dental and orthodontic services and related payment processing. *Id.* at 506. The State eventually filed its own action against Xerox in 2014, alleging that it fraudulently operated payment review processes while serving as the administrator for the Texas Medicaid program. *Id.* at 506-07. In February 2019—the same month Dr. Ludlow was promoted as Bear Creek's Chief Dental Officer— Xerox Corporation and its subsidiaries agreed to a $235.9 million settlement to resolve the State's suit. Following this settlement, LaFountain intervened in the State's action and claimed that he was entitled to a portion of the State's recovery because the State's claims against Xerox were based on allegations in his 2012 Travis County action. *Id.* at 507.[1] In the Travis County action, the trial court granted summary judgment against LaFountain after striking his experts as

---

[1] The trial court ultimately awarded LaFountain a portion of the State's recovery against Xerox after denying the State's motion for summary judgment, which argued that LaFountain's Travis County action was barred by the prior public disclosure of similar allegations against Xerox in news reports and legislative hearings, among other sources. The Fifteenth Court of Appeals recently reversed the trial court's award of a share of the Xerox proceeds to LaFountain and rendered judgment for the State on LaFountain's claim in intervention. *State v. Alvarez*, ___ S.W.3d ___, 2026 WL 942691 (Tex. App.—15th Dist. Apr. 7, 2026, no pet. h.). We express no view on the merits of that decision.

5

untimely designated, and LaFountain has an appeal pending in the Fifteenth Court of Appeals.[2]

Meanwhile, before Bear Creek's plea to the jurisdiction could be heard in this suit, Dr. Ludlow passed away. The trial court granted a motion to substitute his widow Lauren Ludlow to prosecute the case as a representative of his estate. Bear Creek filed a traditional motion for summary judgment and a supplement to its amended plea to the jurisdiction, arguing that the suit must be dismissed because the claims "extinguished" upon Dr. Ludlow's passing. Lauren Ludlow and the State of Texas opposed Bear Creek's motion for summary judgment, arguing that the pending claim is survivable. The State's opposition emphasized the State's interest in the outcome of the pending action and its right to intervene in the case, settle the claims against Bear Creek, and recover a portion of the proceeds of the action. The State did not file an opposition to Bear Creek's plea to the jurisdiction or alternative motion to abate.

The trial court denied Bear Creek's plea to the jurisdiction and alternative motion to abate and motion for summary judgment. Bear Creek challenged these rulings by filing a petition for writ of mandamus with the court of appeals, which denied the petition. This mandamus petition followed.

---

[2] *State ex rel. LaFountain v. BLT Mgmt. Co.*, No. 15-25-00067-CV, Court of Appeals for the Fifteenth District of Texas.

## STANDARD OF REVIEW

The extraordinary remedy of mandamus is available only on a showing that the trial court clearly abused its discretion and that there is no adequate appellate remedy. *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023). A trial court clearly abuses its discretion when its ruling fails to apply the law correctly. *Id.* at 655.

Mandamus is "generally unavailable when a trial court denies summary judgment." *In re Academy, Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (quoting *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008)). This general rule recognizes that many summary judgments do not implicate substantive rights—like a party's right to arbitration or the right to be represented by its chosen attorney—that would be defeated if trial proceeded. *McAllen Med. Ctr.*, 275 S.W.3d at 465-66. The rule also prevents undue interference with trial court proceedings by adding to the expense and delay of civil litigation through parallel appellate proceedings. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). But mandamus relief can be appropriate when the act of proceeding to trial defeats a substantive right that cannot be protected by a normal appeal, as when a party is forced to defend a suit despite Congress immunizing it from such suits. *Academy,* 625 S.W.3d at 35; *accord In re Facebook, Inc.*, 625 S.W.3d 80, 87 (Tex. 2021).

The Legislature has provided for interlocutory appellate review of trial court rulings on pleas to the jurisdiction by governmental units, but that statute does not apply here. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). We have recognized that "the hardship of a full-blown trial" is not sufficient to warrant mandamus relief from the denial of

7

other pleas to the jurisdiction absent "unique circumstances mandat[ing] the Court's intervention," such as exclusive agency jurisdiction over the dispute. *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004); *see also In re Crawford & Co.*, 458 S.W.3d 920, 929 (Tex. 2015) (per curiam).

## ANALYSIS

### I.     A pending *qui tam* action survives the relator's death.

#### A.     *Qui tam* claims belong to the State.

Bear Creek's first issue concerns whether a pending *qui tam* action under the Texas Health Care Program Fraud Prevention Act survives the relator's death when the State has not chosen to intervene as a party. Because the Act does not address survivability, Bear Creek argues that such a claim does not survive under the common-law rule that "all causes of action for damages die with the person of the party injured, or the person inflicting the injury, except such damages as grow out of acts affecting the property rights of the injured party." *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 784 (Tex. 2006).

According to Bear Creek, *qui tam* actions under the Act are personal and punitive in nature—not property-based—and must be dismissed under this rule upon the death of the individual prosecuting the action.[3] But if pending claims under the Act instead qualify as suits

---

[3] Bear Creek raised this issue in a motion for summary judgment, and it contends we may consider the denial of the motion via mandamus partly because the trial court lost subject-matter jurisdiction when Dr. Ludlow died. We need not determine whether survivability is a jurisdictional question

8

by the State even if it has not yet intervened, Bear Creek asks us to determine whether common-law survivability principles are inapplicable. To resolve the question whether claims in a *qui tam* action must be dismissed upon a private relator's death, we start with the provisions of the Act that authorize and govern these claims.

The Act prohibits misrepresentations to the Texas Medicaid program to obtain an unauthorized benefit. *See* TEX. HUM. RES. CODE § 36.002(1). Private persons are authorized to pursue civil actions for violations of this prohibition. *Id.* § 36.101. If the private relator bringing the action establishes that an unlawful act was committed, the person committing the unlawful act "is liable to the state." *Id.* §§ 36.052(a), 36.101(b). Actions initiated by private persons under the Act are therefore brought "for the person and for the state" and "in the name of the person and of the state." *Id.* § 36.101(a).

The Act gives the State substantial powers over a private relator's *qui tam* action, including the right to "proceed with the action" early in the suit. *Id.* § 36.102(c). The State may also participate in the action later upon good cause shown, *id.* § 36.104(b-1), which surely includes the relator's death. The State may settle the action with the defendant over the relator's objection. *Id.* § 36.107(c). And the relator lacks control over the disposition of the claims: private actions under the Act can be dismissed only if the "court and the attorney general consent in writing to the dismissal and state their reasons for consenting." *Id.* § 36.102(e).

---

because we conclude Bear Creek is not entitled to mandamus relief for the reasons that follow.

9

Private relators have an incentive to bring these actions because they can receive a portion of the State's proceeds. *Id.* § 36.110. But a relator's potential entitlement to compensation does not change the nature of a civil suit under the Act, which seeks to prove that a defendant is "liable to the state" for sums including "the amount of any payment or the value of any monetary or in-kind benefit" received from Texas Medicaid and similar health care programs because of unlawful acts committed against those programs. *Id.* § 36.052(a).[4]

These statutory provisions show that the claims pending in the trial court for violations of Section 36.002 are not Dr. Ludlow's but the State's. We therefore reject Bear Creek's argument that the underlying proceeding must be dismissed because the *qui tam* claims extinguished upon the relator's death under the common-law survivability rule that personal claims "die with the person of the party injured, or the person inflicting the injury." *Belt*, 192 S.W.3d at 784. The State is the party allegedly injured; it is still very much in existence and has filed a brief in this Court opposing summary judgment. Similarly, the Bear Creek defendants inflicted the alleged injuries, and all are still alive or continue to exist. Thus, there is no survivability question to be decided, and we need not conduct a common-law analysis of whether the claim is personal or property-based.

---

[4] This Court has long treated actions filed by *qui tam* relators as justiciable. *See, e.g.*, *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 716 (Tex. 2024); *Mo. Pac. Ry. v. Shuford*, 10 S.W. 408, 411 (Tex. 1888); *Doss v. State*, 6 Tex. 433, 434 (1851). The parties before us have not questioned justiciability in any court, and we decline to exercise our discretion to address it in denying this mandamus petition. *See In re Coppola*, 535 S.W.3d 506, 510 (Tex. 2017).

10

In sum, the claims against Bear Creek are for injury and liability to the State, brought in its name and subject to its control, and neither the State nor the Bear Creek defendants have ceased to exist. Accordingly, the *qui tam* claims pending in the trial court survived Dr. Ludlow's death. The trial court did not abuse its discretion in denying Bear Creek's motion for summary judgment asserting that the claims extinguished upon Dr. Ludlow's death.

**B.      Bear Creek has not challenged capacity.**

According to Bear Creek's brief, if a *qui tam* action brought by a private relator "qualifies as a suit by the State" such that common-law "survivability principles do not apply—and the . . . claims thus survived [Dr.] Ludlow's death—then the Executrix [of his estate, Lauren Ludlow,] may continue to litigate the claims." In this Court, neither the parties nor the State say anything against either the executor's ability to proceed with the action, *see* TEX. HUM. RES. CODE § 36.104(b); TEX. R. CIV. P. 150-151, or the estate's continued interest in a share of any proceeds recovered, *see* TEX. HUM. RES. CODE § 36.110; TEX. EST. CODE §§ 101.003, 351.151.

Nor was any such issue presented to the trial court, so there has been no exercise of discretion that we can review by mandamus. Whether the personal representative of a deceased person may act on behalf of that person's estate is a question of capacity. *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005). Capacity must be challenged by filing a verified plea. *See* TEX. R. CIV. P. 93; *In re UMTH Gen. Servs., L.P.*, 725 S.W.3d 424, 429-430 & n.22 (Tex. 2025). The record does not disclose that such a plea raising capacity has been filed.

11

Our adversary system of justice "depends on the parties to frame the issues for decision and assign[s] to courts the role of neutral arbiter of matters the parties present." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) (alteration in original) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).[5] The Supreme Court of the United States refers to this understanding of the judicial role as "the principle of party presentation." *Clark v. Sweeney*, 607 U.S. 7, 9-10 (2025). "If a party passes up what seems to us a promising argument, we do not assume the role of advocate." *Trump v. Illinois*, 146 S. Ct. 432, 437 (2025) (Alito, J., dissenting). Instead, the "adversary system is designed around the premise that the parties know what is best for them." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment). Because the parties confine their challenge in this Court to the survival of the claim, we do not address capacity.

## II. Bear Creek has not conclusively established that the first-to-file bar applies to this suit.

We next consider whether this suit is "based on the facts underlying" LaFountain's still-pending 2012 suit and therefore is

---

[5] *See also City of Houston v. Rodriguez*, 704 S.W.3d 462, 471 n.35 (Tex. 2024); *In re Off. of Att'y Gen.*, 702 S.W.3d 360, 366 (Tex. 2024); *Powell v. City of Houston*, 628 S.W.3d 838, 843 (Tex. 2021) ("We do not seek out issues but 'wait for the cases to come to us, and when they do we normally decide only questions presented by the parties.'" (quoting *In re Abbott*, 601 S.W.3d 802, 809-810 (Tex. 2020) (quoting *Greenlaw*, 554 U.S. at 244))).

prevented from proceeding by the so-called "first-to-file" bar.[6]  Bear Creek asserts that it is and sought dismissal on that basis in a plea to the jurisdiction.  Without deciding whether the first-to-file bar's prohibition on "bring[ing] a related action" based on the same underlying facts is jurisdictional, *see* TEX. HUM. RES. CODE § 36.106, we consider its application as "a pure issue of law pertaining to the merits" of Bear Creek's request to dismiss the underlying action. *See Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 439-441 (Tex. 2023) (considering non-jurisdictional legal issue improperly raised in plea to the jurisdiction).  Our review of the issue "mirrors that of a traditional summary judgment motion," requiring Bear Creek to prove conclusively that the first-to-file bar applies. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

The parties disagree about how a court should determine whether one action under the Act is "based on the facts underlying" another.  *See* TEX. HUM. RES. CODE § 36.106.  Bear Creek argues that the Ludlow suit cannot proceed because it is based on the same alleged overarching scheme led by Dr. Tafel of performing unnecessary dental procedures and billing them to Medicaid.  According to Bear Creek, these are the "essential facts" and "material elements" that would drive the inquiry in a federal False Claims Act case under *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009).  Federal courts apply the False Claims Act's first-to-file bar if the first-

---

[6] *See* TEX. HUM. RES. CODE § 36.106 ("A person other than the state may not intervene or bring a related action based on the facts underlying a pending action brought under this subchapter.").

filed suit provides sufficient information for the federal government "to discover related frauds." *Id.* (quoting *United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab'ys, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)); *accord United States v. Planned Parenthood of Houston*, 570 F. App'x 386, 389 (5th Cir. 2014). Lauren Ludlow responds that this suit is not based on the "facts underlying" LaFountain's action because it concerns different transactions resulting in impermissible benefits and payments to Bear Creek.

Neither standard is correct. Nothing in the text of the Act's first-to-file bar indicates that it applies based on a court's inference that an earlier suit would facilitate the government's discovery of related frauds. Nor does the text indicate that so long as a suit targets separate transactions or instances of fraudulent conduct, it will not be "based on the facts underlying" another suit concerning an identical fraudulent scheme by the same actors at the same time.

Instead, we conclude that the "facts underlying a pending action" are "core allegations" necessary to establish that the Act has been violated. *Cf. In re Oncor Elec. Delivery Co.*, 716 S.W.3d 525, 532 (Tex. 2025) (describing the standard courts apply in considering a Rule 91a motion). Like the standard courts apply in determining whether a petition alleges a health care liability claim, the inquiry "focus[es] on the set of operative facts underlying the claim that are relevant to the alleged injury, not on how the plaintiff's pleadings describe the facts or legal theories asserted." *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023) (internal quotation marks omitted). As the movant, Bear Creek has the burden to show conclusively that these

14

essential operative facts are materially the same. *Mission Consol.*, 372 S.W.3d at 634.

It is not enough that Dr. Ludlow's and LaFountain's pleadings allege a scheme directed by Dr. Tafel to perform unnecessary dental treatments and bill them to Medicaid, as the alleged violations could be committed at such different times and through such different means that they constitute two separate schemes. We must therefore consider the extent of the overlapping allegations and any differences to determine whether Bear Creek has conclusively shown that the Ludlow suit alleges merely additional aspects of the same fraudulent scheme rather than identifying a new one.

One key difference is that Dr. Ludlow filed this suit in 2021, more than nine years after LaFountain's action. Dr. Ludlow and LaFountain also overlapped very little during their respective employment with Bear Creek: LaFountain worked there from 2004 to 2012, and Dr. Ludlow from late 2011 to 2021. The two relators also describe first observing an alleged fraud scheme fifteen years apart. LaFountain began his Bear Creek employment in 2004 as an office manager for one of its dental clinics and alleges that he observed Medicaid fraud the same year. Dr. Ludlow began as a dentist at Bear Creek and described learning of Medicaid fraud only after his promotion to a new administrative leadership role in February 2019. The Ludlow suit also includes five additional defendants not in LaFountain's suit, while LaFountain sued a Xerox affiliate and a professional corporation not in the Ludlow suit.

15

That two suits generally cover different time periods is not alone dispositive of whether the first-to-file bar applies; a scheme, especially one that is successfully concealed, can last a long time. But the difference in timing is notable here given that the two relators reported learning of fraud schemes fifteen years apart. This significant time gap requires further inquiry to determine whether defendants common to both suits engaged in separate schemes with similar goals but employed different essential means. And that inquiry reveals an important development during the gap: Dr. Ludlow reported learning of the underlying fraud in February 2019—the same month that the State of Texas announced a nine-figure settlement with Xerox and affiliates, including the Xerox defendant in LaFountain's suit, concluding a period of enormous scrutiny of dental and orthodontic Medicaid service providers and claim processors. LaFountain was initially awarded a portion of that settlement based on the allegations in his 2012 action, which the court of appeals recently reversed. *See Alvarez*, ___ S.W.3d ___, 2026 WL 942691, at *7-14. Before the State and Xerox settled, the State "vigorously opposed [Xerox's] efforts to bring the Medicaid service providers into the Xerox litigation" after Xerox argued that the providers were the recipients of any disputed Medicaid payments processed by Xerox. *In re Xerox Corp.*, 555 S.W.3d 518, 521 (Tex. 2018).

Thus, at the same time Dr. Ludlow claims he learned of a fraudulent scheme at Bear Creek to perform unnecessary dental services for reimbursement by Medicaid, the State of Texas had just announced "the largest single resolution in a case filed by the attorney general's office for Medicaid-related claims" with one of Bear Creek's co-

16

defendants in LaFountain's 2012 suit. Given the substantial statewide scrutiny of claims by Medicaid dental and orthodontic providers between LaFountain's employment at Bear Creek from 2004 to 2012 and Dr. Ludlow's promotion to an administrative role at Bear Creek in 2019, it is quite possible that any alleged Medicaid fraud scheme existing at Bear Creek in 2019 was newer, more sophisticated, or had changed in some material way in response to the seismic transformation in the regulatory landscape in the years leading up to the State's $235.9 million settlement with a co-defendant in LaFountain's suit.

Comparing the petitions in the two actions indicates that such a material change did occur: the Ludlow suit alleges a narrower fraud scheme that emphasizes less invasive procedures. This suit alleges that Bear Creek's primary fraud method is performing and billing for unnecessary tooth fillings and sending corresponding fraudulent bills for payment to Medicaid under American Dental Association Billing Codes D2391 and D2392. It alleges that these fillings were not performed based on patient needs but on Bear Creek's standing treatment plan to place fillings on every posterior tooth either in a single appointment or over a one-to-two-year period regardless of the patient's needs. According to Dr. Ludlow, Dr. Tafel pressured and intimidated dentists to generate more bills under these two codes.

The Ludlow suit also alleges that Dr. Tafel instructed Bear Creek dentists more generally to "[l]eave no tooth untouched," "[p]ut a filling in every groove," "[p]ut a root canal under every crown," and that every patient who had not visited the dentist recently needed "scaling." LaFountain's suit includes similar allegations—including Dr. Tafel's "no

17

tooth untouched" motto—and identifies specific Bear Creek dentists who performed unnecessary fillings, scaling, and crowns. But LaFountain's suit emphasizes the over-utilization of other billing codes for pulpotomies (D3220), stainless steel crowns (D2930-34), administering nitrous oxide (D9230), and certain evaluation and preventative services (D145) as the primary instances of fraud against the Medicaid program. According to LaFountain, Bear Creek clinics were among state leaders in the millions of dollars billed to Medicaid under these codes during 2011, the year preceding LaFountain's action and the State's investigation of a co-defendant in his suit. LaFountain also alleged that Dr. Tafel directed dentists who were not credentialed with Medicaid to submit Medicaid claims using Dr. Tafel's Medicaid credentials. Another key component of the scheme LaFountain alleges is the performance of highly invasive and medically unnecessary procedures on children and Bear Creek's programmatic efforts to conceal the children's suffering during these painful procedures from parents.

Although there is some overlap between the core allegations of the two suits, Bear Creek has failed to conclusively establish that Dr. Ludlow's action is based on the essential facts underlying LaFountain's suit rather than a narrower, more sophisticated fraudulent scheme that Bear Creek developed to skirt the increased scrutiny over Medicaid dental and orthodontic service providers during the period leading up to the Xerox settlement and Dr. Ludlow's promotion to an administrative leadership role at Bear Creek in 2019. At this stage, at least, it is not clear that Dr. Ludlow has merely alleged further instances of the same scheme rather than identified a new scheme. Accordingly, we hold that

18

the trial court did not clearly abuse its discretion in concluding that the Ludlow suit was not "based on the facts underlying" LaFountain's earlier action and thus the first-to-file bar did not prevent it from proceeding.

## III.    The public-disclosure bar does not apply to this suit.

Bear Creek also contends that LaFountain's suit "publicly disclosed" "substantially the same allegations or transactions" as those later alleged in the Ludlow suit, which must be dismissed. TEX. HUM. RES. CODE § 36.113(b). Again, Bear Creek raised this "public-disclosure bar" in its plea to the jurisdiction, and we address the merits of the issue without deciding whether the bar is jurisdictional. *See Molina*, 659 S.W.3d at 439-441.

For the reasons discussed above, we conclude that the allegations in the two suits are not "substantially the same." But even if they were, the public-disclosure bar would not apply for two reasons. First, the bar does not apply to private civil actions in which the State is not a party. TEX. HUM. RES. CODE § 36.113(b). Second, it does not apply if the Attorney General opposes dismissal, as he does here.

### A.    The bar does not apply to private civil actions in which the State is not a party.

The Act's public-disclosure bar provides:

The court shall dismiss an action or claim under this subchapter, unless opposed by the attorney general, if substantially the same allegations or transactions . . . were publicly disclosed in a Texas or federal criminal or civil hearing in which the state or an agent of the state is a party, in a Texas legislative or administrative report, or

19

other Texas hearing, audit, or investigation, or from the news media . . . .

*Id.*

Bear Creek does not assert that the bar applies because the State is a party to the LaFountain action, and it appears that the State ultimately declined to intervene in that action, which LaFountain continues to pursue in the Fifteenth Court of Appeals. Nor does LaFountain's live pleading constitute a disclosure from the news media, a Texas legislative or administrative report, or a Texas audit or investigation. Bear Creek's contention that the public-disclosure bar applies thus assumes that LaFountain's pleading is "[an]other Texas hearing." *Id.* We disagree.

We apply the plain meaning of undefined statutory terms unless that meaning leads to absurd results or another meaning is apparent from the statutory context. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133 (Tex. 2019). When a term is undefined, "we generally consult dictionaries for the term's commonly understood meaning." *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 735 (Tex. 2024). We may also consider former versions when construing statutes. TEX. GOV'T CODE § 311.023(4). Here, the ordinary meaning of "hearing," the statutory context, and prior versions of the public-disclosure bar all confirm that LaFountain's state-court civil pleadings are not a "Texas hearing" for purposes of the public disclosure bar.

A hearing is commonly understood as a "formal, scheduled setting in which an affected person presents arguments to a decision-maker." *Hearing,* BLACK'S LAW DICTIONARY (12th ed. 2024). Hearings often occur

before members of the judicial, legislative, or executive branches of government. A hearing before the judicial branch is commonly understood as a "judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." *Id.* And a legislative hearing is a "proceeding in which legislators or their designees receive testimony about legislation that might be enacted." *Id.* None of these dictionary definitions encompass a pleading filed in a Texas court.

Even if the term "hearing" could include writings filed in civil actions, reading the term "other Texas hearing" in context confirms that it would apply only to actions in which the State is a party. The phrase "other Texas hearing" is part of a list of proceedings—including reports, audits, and investigations—conducted by or before the "legislative" branch or an "administrative" agency. Construing "other Texas hearing" to include all "Texas civil hearings" would nullify the earlier provision in this subsection limiting civil court hearings triggering the public-disclosure bar to those in which the State is a party. That construction would also render surplusage the first-to-file bar and its limitation to pending actions.

Comparing the current statute against prior versions confirms that "other Texas hearing" does not include private civil actions. The version enacted in 1997 applied broadly to Texas and federal governmental proceedings in all three branches:

> A person may not bring an action under this subchapter that is based on the public disclosure of allegations or transactions in a *criminal or civil hearing*, in a *legislative or administrative report, hearing, audit, or investigation*, or from the news media . . . .

21

Act of June 1, 1997, 75th Leg., R.S., ch. 1153, § 4.08, 1997 Tex. Gen. Laws 4328, 4348 (emphases added) (amended 2011) (current version at TEX. HUM. RES. CODE § 36.113(b)).  This version covered all hearings—criminal, civil, federal, and state—regardless of whether the State or any governmental entity was a party to the hearing or action.  Thus, the "criminal or civil hearing" prong of the public-disclosure bar initially covered all judicial proceedings.  And the remaining references to governmental proceedings—"a legislative or administrative report, hearing, audit, or investigation"—encompassed public proceedings before the other two branches of government.

Then, in 2011, an amendment limited the relevant judicial proceedings triggering the public-disclosure bar to those in which the State or its agent was a party:

> A person may not bring an action . . . based on the public disclosure of allegations or transactions in a *criminal or civil hearing in which the state or an agent of the state is a party*, in a legislative or administrative report, hearing, audit, or investigation, or from the news media . . . .

Act of May 23, 2011, 82d Leg., R.S., ch. 398, § 5, 2011 Tex. Gen. Laws 1054, 1056 (emphasis altered) (current version at TEX. HUM. RES. CODE § 36.113(b)).  This amendment narrowed the category of judicial proceedings to which the public-disclosure bar applies, but it did not change the provision concerning public proceedings before the other branches.

The statute was amended once more in 2013 to reach its current form.  These amendments clarified that the relevant criminal or civil hearings in which the State is a party include "Texas or federal"

22

hearings, and they removed federal government proceedings before the other branches:

> The court shall dismiss an action or claim under this subchapter, unless opposed by the attorney general, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a *Texas or federal criminal or civil hearing* in which the state or an agent of the state is a party, in a *Texas legislative or administrative report*, or *other Texas hearing*, audit, or investigation, or from the news media . . . .

TEX. HUM. RES. CODE § 36.113(b) (emphases added).

This statutory evolution confirms that the "other Texas hearing" language on which Bear Creek relies has never referred to judicial proceedings but rather hearings before the other branches. It does not apply to public disclosures in LaFountain's petition in the 2012 Travis County action.

## B. The bar does not apply because the Attorney General opposes dismissal.

We also conclude that the public-disclosure bar does not require dismissal of the underlying proceeding because the Attorney General opposes dismissal. *Id.* ("[t]he court shall dismiss an action . . . unless opposed by the attorney general"). The Attorney General opposed Bear Creek's motion for summary judgment in the underlying proceeding and asks this Court to deny mandamus given the State's "interest in the survival and resolution of Dr. Ludlow's claims to ensure that health care providers are held accountable for any unlawful acts and to protect the integrity of the Texas Medicaid program." Denying mandamus relief would leave in place the trial court orders denying Bear Creek's motion

23

for summary judgment and plea to the jurisdiction and allow this case to proceed.

*     *     *

Because the Attorney General opposes dismissal and the public-disclosure bar does not apply to pleadings in private civil actions in which the State is not a party, the trial court did not clearly abuse its discretion in refusing to dismiss the underlying proceeding under the Act's public-disclosure bar.

## IV. The Travis County court does not have dominant jurisdiction over the Ludlow suit.

Bear Creek alternatively argues that the trial court abused its discretion by denying Bear Creek's request to abate the Ludlow suit because Travis County acquired dominant jurisdiction in 2012 when LaFountain filed his Travis County suit.

When there is "an inherent interrelation of the subject matter" between two pending lawsuits, the doctrine of dominant jurisdiction requires the later-filed suit to be abated. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988). "It is not required that the exact issues and all the parties be included in the first action . . . , provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues." *Id.*; *see also In re King*, 478 S.W.3d 930, 933 (Tex. App.—Dallas 2015, orig. proceeding) ("to prevail on a motion to abate in a second-filed suit, a movant must establish . . . the first-filed suit does include, or could be amended to include, all of the parties").

Bear Creek has not established that LaFountain's pending action can be amended to include the Ludlow parties and issues. LaFountain

24

lost his Travis County action on summary judgment and his appeal is now pending before the Fifteenth Court of Appeals. Rather than arguing that LaFountain's action can be amended to include Ludlow, Bear Creek takes the opposite position. If the Fifteenth Court of Appeals affirms the judgment against LaFountain, Bear Creek contends that the Ludlow suit would be precluded by res judicata even though Dr. Ludlow was never a party and did not know about LaFountain's action, which proceeded for years under seal. And if the Fifteenth Court instead reverses the judgment, the Act is clear that private persons "may not intervene" in the LaFountain action while it remains pending. TEX. HUM. RES. CODE § 36.106.

Because Bear Creek has not established that LaFountain's suit includes or could be amended to include the Ludlow parties and issues, the trial court did not abuse its discretion in denying Bear Creek's alternative motion to abate the underlying proceeding. Having addressed each of Bear Creek's issues, we deny its petition for writ of mandamus.

J. Brett Busby
Justice

**OPINION DELIVERED:** June 19, 2026

25